**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| RUSS IVY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| JADE TRAN; XL REI, LLC; DOES 1-10 | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

COMES NOW Plaintiff, Russ Ivy, by and through his undersigned counsel, to file this Complaint against Defendants Jade Tran and XL REI, LLC. In support, he states the following:

### A. INTRODUCTION

1.      In Louisiana, landlords are required to follow the legal eviction process if they decide to terminate a lease. But Russ Ivy's landlord ignored her legal obligations and took matters into her own hands with a pattern of threats and harassment, culminating in one incident where she pounded on his door with a broom and threw a satellite dish through his window.

2.      On August 1st, 2019, Russ Ivy signed a lease to rent the property at 56341 Dock Marinoff Road in Bogalusa, Louisiana, from Jade Tran and XL REI, LLC. The lease was predicated on a rent-to-own agreement, which was incorporated into the lease.

3.      Mr. Ivy lived at the property undisturbed until April, 2020, when a man he had never seen showed up to change his locks. Mr. Ivy told the man that he was the tenant, and asked him to leave.

4.      On April 7, 2020, law enforcement knocked on his door and told Mr. Ivy that they had been contacted by the landlord and that he should vacate the premises.

5.     When Mr. Ivy explained that he never received an eviction notice, the officer handed him a notice dated March 25, 2020, and told him "now you have."

6.     Mr. Ivy did not receive a proper notice until April 9, 2020, via FedEx.

7.     The next day, the same law enforcement officers arrived and, again, told Mr. Ivy to leave. But when Mr. Ivy showed the April 9, 2020, FedEx receipt to the officers, they called Ms. Tran and explained that they did not have legal authority to make Mr. Ivy leave at that time.

8.     Ms. Tran protested, claiming that she had already rented the property to someone else and that Mr. Ivy had to vacate the property so the new tenant could move in.

9.     Ms. Tran and her as-yet unidentified assistants then started a campaign of intimidation in an apparent effort to force Mr. Ivy from the property.

10.     This included threatening Mr. Ivy that she was on her way to the property with a U-Haul truck, and ultimately running at Mr. Ivy with a broom, banging on his door while yelling at him to leave, and breaking his window with a satellite dish, prompting Mr. Ivy to call 911 out of fear for his life.

11.     Making matters worse, Ms. Tran's attempted illegal eviction happened in the midst of the COVID-19 pandemic while Mr. Ivy was self-quarantined upon the advice of a doctor. Louisiana Governor John Bel Edwards' stay-at-home order was active at all times relevant to this Complaint.[1]

12.     For these acts and those described herein, Defendants are liable for the illegal self-help eviction of Russ Ivy, fraud, trespassing, intentional infliction of emotional distress, breach of warranty, breach of contract, assault and battery, and violations of the Louisiana Unfair Trade Practices Act.

---

[1] Governor John Bel Edwards, Proclamation Number 33 JBE 2020.

## B.  PARTIES

*Petitioner*

13.     Russ Ivy is a person of full age of majority residing in Washington Parish, Louisiana, which is located within the Eastern District of Louisiana.

*Defendants*

14.     Jade Tran is a person of full age of majority residing in in Austin, Texas, but doing business in Washington Parish, Louisiana, which is located within the Eastern District of Louisiana.

15.     XL REI, LLC is a Non-Louisiana Limited Liability Company authorized to do business in the State of Louisiana. Its principal business office is at 700 Lavaca, Ste. 1400, Austin, Texas. Its registered office in Louisiana is 201 Rue Boulevard, Ste. 202, Lafayette, Louisiana 70508 and its principal business establishment in Louisiana is 56341 Dock Marinoff Road, Bogalusa, Louisiana, 70427. Jade Tran is the listed manager and the company's only listed officer.

16.     Doe Defendants 1-10 are as-yet unidentified individuals who are liable for the actions stated herein.

## C.  JURISDICTION AND VENUE

17.     Jurisdiction is proper in the Eastern District of Louisiana under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00[2] and the dispute is between citizens of

---

[2] Plaintiff estimates that his claims are likely to exceed $75,000.00. While awards for intentional infliction of emotional distress claims vary, Plaintiffs' particular claims include threats to his safety within his own home, made more severe due to health complications that require him to stay in the home, specifically a respiratory illness requiring a non-mobile machine and because, during the incidents at issue, Plaintiff was self-quarantined on the advice of his doctor under suspicion of having contracted COVID-19. The trespass claim, alone, was valued by an Eastern District of Louisiana jury at $15,000.00 within the context of a landlord-tenant relationship, but without the extreme factors and threats of violence present here. *Patz v. Sureway Supermarket*, E.D. La., 17-cv-03465, R. Doc. 189. Further, the Louisiana Unfair Trade Practices Act, in addition to regular damages, includes an award for reasonable attorney's fees and costs. La. R.S. § 51:1409. Attorney's fees are considered in determining the amount

different states. The Eastern District of Louisiana has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claim occurred in Washington Parish, Louisiana, situated within the Eastern District of Louisiana.

### D.  STATEMENT OF FACTS

19.     Plaintiff Russ Ivy has rented the property at 56341 Dock Marinoff Road in Bogalusa, Louisiana ("Property"), since March, 2019, initially from Kenneth and Julie Miller.

20.     Soon after beginning the lease, Mr. Ivy approached his landlord about the possibility of renting-to-own, but his landlord was not interested in such an arrangement.

21.     Mr. Ivy then learned that Defendant XL REI, LLC ("REI")'s business model included buying homes from landlords and then entering into a rent-to-own agreement with interested tenants and REI agreed to do so for the Property.

22.     However, when REI learned that it was not authorized as an out-of-state business to purchase the Property, Defendant Jade Tran, REI's manager, bought the property under her own name, finalizing the deal in July, 2019.

23.     Although the Property was purchased by Ms. Tran, she operated it as a regular REI property, even listing the Property as the "principal business address" for REI's Louisiana operations and communicating with Mr. Ivy on REI letterhead.

24.     Mr. Ivy then signed a lease agreement with REI, signed by Ms. Tran, beginning in August, 2019.

---

of controversy when those fees are awarded by statute. *See, e.g., Graham v. Henegar*, 640 F.2d 732, 736 (5th Cir. 1981). Finally, the lease agreement was predicated on Plaintiffs' desire to purchase the property for $80,000.00, which is explicitly stated in the lease which further states that his security deposit and rental payments would be credited towards that purchase price in the event it is exercised as intended.

25.     The lease agreement included the rent-to-own provision, stating that Mr. Ivy could, in his sole discretion, purchase the Property for $80,000.00, plus interest. His rent payments and security deposit would be credited to that purchase, should it be exercised.

26.     Mr. Ivy continued to rent the property from Ms. Tran undisturbed until April 5 or 6, 2020 when a man that Mr. Ivy did not recognize and is yet unidentified showed up to change the locks. The man left without doing so after Mr. Ivy identified himself as the tenant.

27.     On April 7, 2020, two law enforcement officers showed up at the Property and told Mr. Ivy he was being evicted and had to vacate.

28.     Mr. Ivy explained that he had not received any legal notice of the eviction, to which the officer handed him a notice dated March 25, 2020, and stated "now you have."

29.     On April 9, 2020, Mr. Ivy received proper legal notice of eviction via a FedEx package delivered to his home. The notice was provided on REI letterhead.

30.     The next day, the same law enforcement officers returned to the Property and told Mr. Ivy that he had to leave. Mr. Ivy responded by showing the officers the FedEx receipt dated April 9, 2020, which meant that he did not have to vacate the property that day. The officers agreed.

31.     The officers, in Mr. Ivy's presence, then called Ms. Tran and the officers explained to her that they did not have legal authority to remove Mr. Ivy from the property considering the service timeline.

32.     Ms. Tran complained and again urged the officers to remove Mr. Ivy, claiming that she had already signed a lease with a new tenant. The officers reiterated that they could not legally removed Mr. Ivy.

33. But Ms. Tran did not accept "no" for an answer from the legal authorities. Instead, she and various Doe Defendants began a campaign of harassment against Mr. Ivy in an apparent attempt to get him to leave without the legal eviction process.

34. Lt. Chris Hickman arrived at the Property and told Ms. Tran that she had no legal authority to force Mr. Ivy to leave as the legal process was still ongoing. Despite this, Ms. Tran still attempted to drive a U-Haul to the Property until Lt. Hickman was able to prevent her from following through.

35. On April 14, 2020, Ms. Tran returned. This time, she ran at Mr. Ivy with a broom and threatened him. Mr. Ivy rushed inside and locked the door, but Ms. Tran began beating the door with the broom and yelling at Mr. Ivy.

36. Mr. Ivy had no way to protect himself and feared for his life, so he called 911.

37. While speaking to dispatch and waiting for law enforcement to arrive, Ms. Tran continued pounding on the door and shattered multiple windows, one of which she broke by smashing it with a satellite dish that was on the porch. Mr. Ivy suffered cuts from the glass.

38. Luckily, Ms. Tran left without causing any further damage to the Property or injury to Mr. Ivy, but the harassment is ongoing and Mr. Ivy continues to fear for his life.

39. Making matters worse, Mr. Ivy is asthmatic and suffers from chronic obstructive pulmonary disease (COPD) which requires that he has access to a nebulizer. The machine requires electricity and a calm space to operate, so Mr. Ivy cannot simply leave the Property and find a safe place to stay as the stress of a forced exit could trigger an attack.

40. Further, Mr. Ivy was self-quarantined during these events on the advice of his doctor due to a suspicion that he had contracted COVID-19, making it even more dangerous for Mr. Ivy to leave the Property.

41.     Because he cannot leave the property without a safe destination, his fear of being attacked again is ongoing.

## E.  CAUSES OF ACTION

42.     Petitioner asserts the following Causes of Action, plead in the alternative where appropriate, against Defendants.

### I.     Self-Help Eviction
*All Defendants*

43.     Plaintiff realleges and incorporates each and every foregoing paragraph.

44.     Under Louisiana state law, "[i]f a lessor chooses to cancel the lease and terminate the lessee's right of occupancy, the lessor must follow the statutory eviction procedures set out in LA.CODE CIV.P. art. 4701, *et seq.*"[3] Landlords are prohibited from disturbing a tenant's possession of the property *in any way* without following the judicial process.[4]

45.     The only circumstance where a landlord may attempt to reclaim the property without a judgement of possession is when the property is clearly abandoned.[5]

46.     The prohibition against self-help evictions extends to circumstances where there is cause for a lawful eviction.[6] Even if a landlord obtains a lawful judgment after-the-fact, that does retroactively justify the attempts at self-help eviction – in other words, the landlord is liable for self-help eviction even if they successfully following the legal process after the self-help eviction.[7]

---

[3] *Patz v. Sureway Supermarket*, E.D. La., 17-cv-03465, R. Doc. 148 at 6.
[4] *Weber v. McMilian*, 285 So 2d 349, 351 (La. App. 4 Cir. 1973), *writ denied* 288 So.2d 357 (La. 1974).
[5] *Buneal of New Orleans, Inc. v. Cigali, 348 So.2d 993 (La. App. 4 Cir. 1977).*
[6] *Pelleteri v. Caspian Group*, 851 So.2d 1230 (La. App. 4 Cir. 2003).
[7] *Id.*

47.     Self-help evictions are considered bad-faith violations of an obligation, which subjects the landlord to both foreseeable and unforeseeable damages.[8] These damages may include, but are not limited to, mental anguish, humiliation, embarrassment, inconvenience, loss or detention of personal property, physical suffering, or loss of use of the property.[9] Wrongful seizure also subjects the landlord to attorney's fees.[10]

48.     Here, Defendants attempted to force Mr. Ivy out of the Property without following the legal process by threatening him, calling on law enforcement to forcibly remove him, and ultimately trying to force entry into his home while he was inside by pounding on the front door and breaking windows, causing Mr. Ivy to fear for his life. He is still afraid that they could come back at any time.

49.     Defendants apparently knew that some process was warranted, as they sent Mr. Ivy notices to vacate. But the first notice was improperly delivered. The second notice was properly delivered, but Defendants refused to wait the five days required by their own notice before calling law enforcement on Mr. Ivy and trying to force their way into his home, as well as other harassment.

50.     Defendants also knew that the property was not abandoned considering Mr. Ivy answered the door on April 5, 2020, when they came to change the locks and have had continuous communications with Mr. Ivy and law enforcement throughout this process.

51.     If Defendants had properly served Mr. Ivy with a notice to vacate and simply followed the judicial process, this issue would likely have been resolved without incident. But

---

[8] La. Civ. Code art. 1997; *Smith v. Shirley*, 815 So.2d 980 (La. App. 3 Cir. 2002) *writ denied* 816 So.2d 308 (La. 2002).
[9] *See e.g., Kite v. Gus Kaplan, Inc*., 708 So.2d 473 (La. App. 3 Cir. 1998); *Gennings v. Newton*, 567 So.2d 637 (La. App. 4 Cir. 1990); *Navratil v. Smart*, 400 So.2d 268 (La. App. 1 Cir. 1981), *writ denied* 405 So.2d 320 (La.1981).
[10] La. Code Civ. Proc. art. 3506; *Horacek v. Watson*, 86 So.3d 766 (La. App. 3 Cir. 2012).

Defendants took matters into their own hands by harassing Mr. Ivy in an apparent attempt to force him off of the property without judicial process.

## II.    Trespass
### All Defendants

52.    Plaintiff realleges and incorporates each and every foregoing paragraph.

53.    "When a lessor takes the law in his hands by unlawfully dispossessing a tenant, he commits a trespass and is liable for general damages."[11]

54.    For the reasons described above, Defendants used self-help while attempting to evict Mr. Ivy. Therefore, they are also liable for trespass.[12]

55.    Defendants committed further specific acts of trespass when they arrived on the property unannounced on multiple occasions, especially when Ms. Tran attempted to break down Mr. Ivy's front door and threw a satellite dish at the window.

## III.    Intentional Infliction of Emotional Distress
### All Defendants

56.    Plaintiff realleges and incorporates each and every foregoing paragraph.

57.    An individual is liable for intentional infliction of emotional distress when they engage in "extreme and outrageous" conduct which causes severe emotional distress and "that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[13]

58.    Here, Defendants owed a duty to Mr. Ivy as landlord to, among other duties, not disrupt his peaceable habitation of the Property, but Defendants chose instead to engage in

---

[11] *Fo-Coin Co. v. Drury*, 349 So. 2d 382, 384 (La. Ct. App. 1977); *Waller & Edmonds v. Cockfield*, 111 La. 595, 35 So. 778 (1904); *Buchanan v. Daspit*, 245 So.2d 506 (La.App.3rd Cir. 1971).
[12] *Id*.
[13] *White v. Monsanto Co*., 585 So.2d 1205, 1209 (La. 1991); *Covington v. Howard*, 146 So. 3d 933, 937 (La. App. 2 Cir.) ("[I]t is now well established in Louisiana jurisprudence that a claim for NIED unaccompanied by physical injury is viable under La. C.C. art. 2315, which provides, in pertinent part, that '[e]very act whatever of man that causes damages to another obliges him by whose fault it happened to repair it.'").

extreme behavior by threatening Mr. Ivy, trespassing on the Property, unnecessarily calling law enforcement on Mr. Ivy, and attempting to forcibly enter his apartment by trying to knock down his front door and breaking his window with a satellite dish while Mr. Ivy was inside.

59.     None of these actions served any legitimate purpose beyond attempting to force Mr. Ivy from his home through fear and intimidation.

60.     Mr. Ivy feared for his life during each of these episodes and continues to live in fear as there is nothing stopping Defendants from trying to break into his home again. Defendants continue to harass Mr. Ivy by driving slowly past the Property which Mr. Ivy takes as a threat and a reminder of the real danger he faces from Defendants.

61.     My. Ivy's damages are heightened because he suffers from [respiratory issue] which requires that he has access to [machine name] which is a non-mobile unit that cannot be easily moved to a new location if he has to quickly leave his home. Mr. Ivy was also self-quarantined upon advice of his doctor during this time due to fears he was COVID-19 positive.

62.     Defendants are real estate professionals who are aware of the proper legal process for eviction and that their self-help methods are certain to cause distress, as they apparently intended.

### IV.     Louisiana Unfair Trade Practices Act
*All Defendants*

63.     Plaintiff realleges and incorporates each and every foregoing paragraph.

64.     The Louisiana Unfair Trade Practices Act (LUTPA) makes it illegal to engage in unfair or deceptive acts of commerce.[14]

---

[14] La. R.S. 51:1401, *et seq.*

65.     LUTPA liability can attach to a wide range of practices that involve "fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct."[15]

66.     Here, Defendants misrepresented to law enforcement Mr. Ivy's tenant status and whether he had been given notice to vacate and used those misrepresentations to harass Mr. Ivy by having law enforcement unnecessarily show up at his home and ask him to leave the property on multiple occasions.

67.     Each time Defendants called law enforcement, Mr. Ivy was put into the distressing position of having to convince officers on his doorstep that Defendants were not being forthcoming, or face being evicted.

68.     Further, to the extent that eviction without legal process is part of their business practice, Defendants' actions of circumventing the courts offends public policy.

69.     LUTPA violations subjects Defendants to treble damages, attorney's fees, and costs.[16]

## V.     Fraud
### All Defendants

70.     Plaintiff realleges and incorporates each and every foregoing paragraph.

71.     Fraudulent acts are those which are a "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."[17]

---

[15] *Tyler v. Rapid Cash, LLC*, 40,656 (La. App. 2 Cir. 5/17/06), 930 So. 2d 1135, 1140, quoting *A & W Sheet Metal Inc. v. Berg Mechanical, Inc.*, 26,799 (La.App.2d Cir.4/5/95), 653 So.2d 15.
[16] La. R.S. 51:1409.
[17] La. Civil Code art. 1953.

72.    Here, Defendants committed fraud when they misrepresented Mr. Ivy's tenant status to law enforcement in an apparent effort to force him off the property instead of obtaining a legal eviction.

## VI.    Breach of Warranty of Peaceful Possession / Breach of Contract
### *All Defendants*

73.    Plaintiff realleges and incorporates each and every foregoing paragraph.

74.    Under Louisiana law, a lessor has a duty to "protect the lessee's peaceful possession for the duration of the lease."[18] A "lessor warrants the lessee's peaceful possession of the leased thing against any disturbance caused by a person who asserts ownership, or right to possession of, or any other right in the thing."[19]

75.    Here, Defendants violated the warranty of peaceful possession when they engaged in a campaign of harassment and attempted to force Mr. Ivy from his home without adhering to the proper legal process.

76.    Defendants also violated Mr. Ivy's contractual right to peaceful possession.

## VII.    Assault and Battery
### *All Defendants*

77.    Plaintiff realleges and incorporates each and every foregoing paragraph.

78.    An assault is an action that puts another person in immediate apprehension of a non-consensual harmful touching. A battery is the completion of a non-consensual harmful touching.

79.    Defendant Tran committed assault and battery against Mr. Ivy when she ran at him with a broom, attempted to break into his home, and, during that attempt, broke a window with a satellite dish causing Mr. Ivy to suffer cuts from the broken glass.

---

[18] La. Civil Code art. 2682.
[19] La. Civil Code art. 2700.

80.     Defendant REI is liable for Defendant Tran's actions under the doctrine of *respondeat superior*. Doe Defendants are liable to the extent that they assisted Defendant Tran or committed further actions that constitute assault and battery.

## F.  REMEDIES

81.     Because of the causes of action plead above, Plaintiff seeks the following:

      a)  Compensatory damages;

      b)  Legal costs and attorney's fees;

      c)  Declaratory relief; and

      d)  Any other remedies equitable under the law.

82.     Petitioners reserve the right to notice of defect to this pleading and reserve the right to amend or supplement this Petition after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.

83.     Petitioners also state any and all other causes of action that may become known through a trial of this matter on its merits against any and all other parties where are named herein or which may be added later, and request any and all other damages or remedies which this Court may deem equitable.

## G.  CONCLUSION

WHEREFORE, Petitioners pray that Defendants be served with process of this Petition for Damages and duly cited to answer same, that after all legal delays and due proceedings are complete that there be judgment in favor of Petitioners and against Defendants, jointly and *in solido* for the full amount of Petitioner's damages, plus legal interest together with all costs incurred in this matter, and any other general or equitable relief that the Court deems proper. Petitioners reserve their right to a trial by jury.

Respectfully submitted,

/s/ David Lanser
David Lanser, La. Bar No. 37764
William Most, La. Bar No. 36914
Sarah Chervinsky, La. Bar No. 33772
Law Office of William Most
201 St. Charles Ave. Suite 114 #101
New Orleans, LA 70170
David.lanser@gmail.com
(504) 533-4521