```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

**RUSS IVY**                                              **CIVIL ACTION**

**VERSUS**                                                **NO. 20-1475**

**JADE TRAN, ET AL.**                                     **SECTION: "B"(4)**

<u>**ORDER & REASONS**</u>

Before the Court are defendants Jade Tran and XL REI, LLC's opposed motions to dismiss for failure to adequately allege an amount in controversy sufficient to warrant federal diversity jurisdiction (Rec. Doc. 9) and to stay plaintiff's discovery (Rec. Doc. 18). For reasons discussed below,

**IT IS ORDERED** that both motions are **DENIED**.

<u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

This case arises out of plaintiff Russ Ivy's allegations that defendants Jade Tran and XL REI, LLC unlawfully resorted to self-help eviction to remove plaintiff from his rental property.[1] Rec. Doc. 1 at 1-2. Plaintiff is a resident of Washington Parish, Louisiana. *Id.* at 3. Defendant XL REI, LLC ("REI") is a limited liability company authorized to do business in Louisiana but incorporated and principally based in Austin, Texas. Defendant Jade Tran ("Tran") is a resident of Austin, Texas.[2]

---

[1] Plaintiff seeks damages pursuant to the allegedly improper manner of the eviction but does not challenge the validity of the eviction order itself.
[2] There is complete diversity of citizenship because plaintiff resides in Washington Parish, Louisiana and REI is incorporated in and has its principal place of business in Austin, Texas, where Tran also resides.

1

Plaintiff avers that he rented the property located at 56341 Dock Marinoff Road, Bogalusa, Louisiana, 70427 (the "Property") from a couple in March 2019.[3] *Id.* at 4. After the previous owners expressed disinterest in a rent-to-own provision, plaintiff reached out to REI, which specializes in purchasing rental properties from landlords and entering into rent-to-own agreements with interested tenants. *Id.* Plaintiff avers that, upon learning that REI could not purchase the Property as an out-of-state business, REI's manager, Tran, purchased the Property in her own name. *Id.*

Plaintiff contends that he entered the rent-to-own agreement with REI and that Tran signed it. *Id.* The lease afforded plaintiff the opportunity to purchase the Property from defendants at his discretion for $80,000, with the rent and security deposit paid to be credited towards the principal. *Id.* at 5. Plaintiff alleges that on April 6, 2020, an unidentified man unsuccessfully attempted to change his locks, and two days later two law enforcement officers arrived and advised plaintiff he was being evicted and must vacate the Property. *Id.* After complaining of the lack of proper eviction notice, plaintiff alleges that the officers gave him a notice dated March 25, 2020 which he had not previously seen, and that proper notice was not received until April 9, 2020. *Id.*

---

[3] That couple is not party to this lawsuit.

Plaintiff alleges that the same officers arrived the next day to insist he vacate the Property but left after seeing the April 9th eviction notice and agreeing that he was not yet required to leave. *Id.* According to plaintiff, the officers called Tran in his presence and explained their lack of legal authority to remove him at that time, but Tran urged them to remove plaintiff anyway because she had already agreed to a lease with new tenants. *Id.* Plaintiff alleges that Tran resorted to "a campaign of harassment," and eventually a law enforcement officer had to prevent her from trying to remove plaintiff. *Id*. at 6. Plaintiff alleges that Tran chased plaintiff with a broom while threatening him and, after he retreated inside, she proceeded to bang on the door and windows. *Id.* Several windows broke, causing injuries to plaintiff. *Id.* Plaintiff allegedly feared for his life but felt he could not safely vacate the premises because of medical conditions and COVID-19 related concerns. *Id.* at 6-7. Plaintiff alleges he eventually vacated the Property before receiving an eviction judgment so Tran would not further escalate matters. *See* Rec. Doc. 10 at 3.

Defendants argue that a LUTPA claim "requires conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* (citing *First Am. Bankcard, Inc. v. Smart Bus. Tech. Inc.*, 178 F.Supp.3d 390, 405-06 (E.D. La. 2016). Defendants also point out that the complaint does not indicate that plaintiff

exercised his right to purchase the Property under the lease's rent-to-own provision. *Id.*

Plaintiff cites language in the original complaint regarding the amount in controversy,[4] and points out that defendants' memorandum failed to address several causes of action that will bear on the quantum of damages: intentional infliction of emotional distress, fraud, and assault and battery.

## **LAW AND ANALYSIS**

Federal courts have limited jurisdiction, and therefore, the power to adjudicate claims only when jurisdiction is conferred by

---

[4] Plaintiff's complaint provides:

> Plaintiff estimates that his claims are likely to exceed $75,000.00. While awards for intentional infliction of emotional distress claims vary, Plaintiffs' particular claims include threats to his safety within his own home, made more severe due to health complications that require him to stay in the home, specifically a respiratory illness requiring a non-mobile machine and because, during the incidents at issue, Plaintiff was self-quarantined on the advice of his doctor under suspicion of having contracted COVID-19. The trespass claim, alone, was valued by an Eastern District of Louisiana jury at $15,000.00 within the context of a landlord-tenant relationship, but without the extreme factors and threats of violence present here. *Patz v. Sureway Supermarket*, E.D. La., 17-cv-03465, R. Doc. 189. Further, the Louisiana Unfair Trade Practices Act, in addition to regular damages, includes an award for reasonable attorney's fees and costs. La. R.S. § 51:1409. Attorney's fees are considered in determining the amount of controversy when those fees are awarded by statute. *See, e.g., Graham v. Henegar*, 640 F.2d 732, 736 (5th Cir. 1981). Finally, the lease agreement was predicated on Plaintiffs' desire to purchase the property for $80,000.00, which is explicitly stated in the lease which further states that his security deposit and rental payments would be credited towards that purchase price in the event it is exercised as intended.

Rec. Doc. 1 at 4-5 n.2.

4

statute and the constitution. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional authority to adjudicate the case. *Home Builders Assn. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of proof for a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Therefore, the plaintiff "constantly bears the burden of proof" that jurisdiction is proper. *Id.* A pleading stating a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction[.]" Fed. R. Civ. P. 8(a)(1). Diversity jurisdiction exists when: (1) there is complete diversity of citizenship between the parties, and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 387 (5th Cir. 2009). The amount in controversy for jurisdictional purposes is determined by the amount of alleged damages or the value of property that is the subject of the case. *Hunt. V. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1997).

Although the plaintiff constantly bears the burden of proving that federal jurisdiction will lie, the sum claimed in good faith controls for purposes of determining whether the jurisdictional threshold has been met, unless the law gives a different rule. *St.

*Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). In the absence of a bad faith complaint, it must appear to a "legal certainty" that the claim is really for less than the jurisdictional amount to justify dismissal. *Id.* at 289. The Fifth Circuit explained that the legal certainty test contemplates the "typical" diversity situation, where a plaintiff initiates the action in federal court alleging damages in excess of the jurisdictional threshold. *De Aguilar v. Boing Co.*, 47 F.3d 1404, 1409 n.6 (5th Cir. 1995).

The instant action is not a remand situation, but rather the "typical" diversity case wherein the plaintiff files in federal court alleging diversity of citizenship and the requisite jurisdictional amount. *De Aguilar* explained that, in such "'typical' circumstances . . . the *St. Paul Mercury* 'legal certainty' test is applicable." *De Aguilar*, 47 F.3d at 1412. However, the "'legal certainty' test has limited utility—in fact is inapplicable—when the plaintiff has alleged an indeterminate amount of damages. Furthermore, 'bare allegations [of jurisdictional facts] have been held insufficient to invest a federal court with jurisdiction.'" *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). As shown earlier and below, the instant complaint expressly asserts specific amounts and reasons for damages in excess of the jurisdictional sum.

Defendants have not alleged that plaintiff's allegations are made in bad faith. Therefore, plaintiff's good faith allegations control and defendants have the burden of proving to a legal certainty that the amount in controversy is less than the jurisdictional threshold. *St. Paul Mercury Indem. Co.*, 303 U.S. at 288-89. Defendants have not met that burden.

The complaint asserts multiple theories of recovery and sets forth detailed factual allegations which, if proven, could warrant recovery in excess of the $75,000 jurisdictional threshold. Plaintiff avers that defendants are liable for self-help eviction damages[5] by Tran's attempts to forcibly remove plaintiff without following proper notice requirements or the judicial process for evictions. He further avers that defendants are liable for trespass damages[6] by Tran's attempts to break down the Property's door and throw a satellite dish through a window. Plaintiff also alleges claims for intentional infliction of emotional distress damages[7]

---

[5] *See Duhon v. Briley*, 2012-1137 (La. App. 4 Cir. 5/23/13); 117 So.3d 253, 259-60 (wrongfully evicted tenant entitled to recover damage and loss sustained under contractual liability, and general damages under delictual liability; trial court has broad discretion where amounts are insusceptible of precise measurement).

[6] *See Loeblich v. Garnier*, 113 So. 2d 95, 103-04 (La. Ct. App. 1959) (trespassing landlord liable for property damage as well as non-pecuniary actual damage, such as mental anguish and suffering); *see also Ard v. Samedan Oil Corp.*, 483 So. 2d 925, 928 (La. 1986) (awarding $250 in property damages and $17,500 in general damages where defendant's continuous trespass caused "substantial pain, mental anguish and inconvenience").

[7] *See Smith v. Mahfouz*, 489 So. 2d 409, 413 (La. App. 3 Cir. 1986) (trial judge has broad discretion in determining damages for intentional infliction of emotional distress, which can include non-pecuniary damages for mental pain and anguish; $14,000 award not an abuse of discretion where defendant intentionally blocked plaintiff's road access to property); *see also Mansur v. Cox*, 2004-0140 (La. App. 1 Cir. 12/30/04); 898 So.2d 446, 448-49 (awarding $5,000 for

by Tran's attempts to remove plaintiff from the Property, while knowing plaintiff was not required to vacate the premises, "through fear and intimidation" (chasing plaintiff, attempting to break down the door, throwing the satellite dish at his window, and improperly seeking the aid of law enforcement officers). Plaintiff also seeks relief for alleged fraud[8] and LUTPA[9] damages by Tran's misrepresentations of facts to law enforcement officers in her attempts to dupe them into aiding her unlawful eviction efforts. The complaint also alleges claims for breach of warranty of peaceable possession[10] and breach of contract[11] damages due to Tran's aforementioned conduct. Finally, plaintiff avers that

---

intentional infliction of emotional distress where defendant-landlord fired weapon at vehicle used to transport plaintiff's belongings).
[8] *See Pittman v. Piper*, 542 So. 2d 700, 702 (La. App. 4 Cir. 1989) (Damages for fraud in breach of contract actions is limited to actual pecuniary damages; damages for fraud in tort permits additional recovery of non-pecuniary damages); *see also Friendly Fin., Inc. v. Cefalu Realty Inv.*, Inc., 303 So.2d 558, 561 (La. App. 4 Cir. 1974) (finding landlord's liability was not limited to that which was foreseeable when breach proceeded from fraud).
[9] *See Doland v. ACM Gaming Co.*, 2005-427 (La. App. 3 Cir. 12/30/05); 921 So.2d 196, 202 on reh'g (Mar. 1, 2006) ("Louisiana's unfair trade practices law gives a right of action to anyone who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as the result of an unfair trade practice and provides for the recovery of actual damages, including court costs and attorneys' fees."); *see also* LA. STAT. ANN. § 51:1409(A) ("If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained.")
[10] *Moity v. Castille*, 469 So.2d 503, 507 (La. Ct. App. 1985) (awarding $1,000 in damages for breach of lease/warranty of peaceable possession where yearly rent was $200 and the plaintiff suffered no expenses as a result of disturbance).
[11] *See Potter v. First Federal Sav. & Loan Ass'n of Scotlandville*, 615 So.2d 318, 323 (La. 1993) ("From the nature of the contract of lease, the lessor is bound, without any clause to that effect, to . . . cause the lessee to be in peaceable possession . . . . These are warranties implied in every contract of lease.") (internal citations omitted). Plaintiff's petition is ambiguous as to whether this contractual duty arose from express language or by operation of law. *See* Rec. Doc. 1 at 12.

8

defendants are liable for assault and battery damages[12] because Tran chased plaintiff, attempted to break into the Property after he fled inside, and injured plaintiff by breaking a window. Furthermore, plaintiff's jurisdictional allegations regarding the amount in controversy allege that the lease included an option for plaintiff to purchase the Property for $80,000, less the rent and security deposit already paid, although the petition neglects to assert a related cause of action. However, as plaintiff ostensibly paid a security deposit and rent, but left the property in fear for his life before defendants secured an eviction judgment, Tran's conduct arguably deprived plaintiff of this contractual right.

    Defendants' motion to dismiss conclusively states that plaintiff only asserted factual bases under three theories of recovery, thereby ignoring without explanation most of plaintiff's claims. Rec. Doc. 9-1 at 2. Defendants also conclusively assert that attorneys' fees are inapplicable, ignoring facts alleged by plaintiff that, if proven, would warrant such statutory penalties under the LUTPA. Moreover, defendants' conclusive statement that plaintiff did not invoke his rent-to-own provision is devoid of any explanation or legal authority as to how that diminishes plaintiff's ability to recover. Albeit minimally, plaintiff's

---

[12] *Red v. Taravella*, 530 So.2d 1186, 1188, 1190 (La. App. 3 Cir. 1988) (awarding plaintiff $10,000 in general damages and $100 in special damages where defendant started barroom altercation resulting in glass cuts to plaintiff).

complaint has alleged an adequate amount in controversy to invoke federal diversity jurisdiction.[13]

To avoid confusion by the ultimate trier of fact and given the broad range of claims and high likelihood of duplicative relief for substantially the same conduct or series of events, plaintiff is directed to reconsider his complaint in order to avoid unwarranted duplication of claims and/or damages. This can be done by either stipulated partial dismissal or amendment of the complaint within fifteen (15) days. Failure to do so could possibly expose plaintiff to sanctions for pursuing duplicative causes.

Lastly, the motion to stay discovery is denied. Discovery is a necessary stage in litigation whether a case proceeds in federal court or in state court; therefore, there is no good cause to stay discovery.

New Orleans, Louisiana this 26th day of January 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[13] However, as discovery progresses, the court is duty-bound to examine the basis of subject matter jurisdiction *sua sponte*. *Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008) (citations omitted); *H & D Tire and Auto. Hardware v. Pitney Bowes Inc.*, 227 F.3d 326, 328 (5th Cir. 2000) ("We have a duty to raise the issue of subject matter jurisdiction *sua sponte*."). Additionally, Federal Rule of Civil Procedure 12(h)(3) requires that federal courts dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter." *Essex Ins. Co. v. Accurate Assocs., LLC*, No. 4:12-CV-03015, 2013 WL 12141552, at *3 (S.D. Tex. Feb. 1, 2013).